IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **JAMES R. COLLINS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No. CIV-24-128-SPS |
| | ) |
| **CAROLYN COLVIN,** | ) |
| **Commissioner of the Social** | ) |
| **Security Administration,** | ) |
| | ) |
| **Defendant.** | ) |

**OPINION AND ORDER**

The claimant James R. Collins, requests judicial review pursuant to 42 U.S.C. § 405(g) of the denial of benefits by the Commissioner of the Social Security Administration. He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision is hereby AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*.

§ 423 (d)(2)(A).  Social security regulations implement a five-step sequential process to evaluate a disability claim.  *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied.  *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997).  Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).  The Court may not reweigh the evidence or substitute its discretion for the Commissioner's.  *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991).  But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951).  *See also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity.  Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities.  If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied.  If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1.  If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry.  Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work.  At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC.  Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work.  *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

Claimant was born on March 8, 1975, and was 47 years old on the alleged disability date (Tr. 17). He was 48 years old at the time of the administrative hearing. (Tr. 27). He has a high school education and has past relevant work experience as a heavy equipment operator, maintenance supervisor, maintenance worker, shipping clerk, and millwright. (Tr. 17).

## Procedural History

Plaintiff applied for disability insurance benefits (DIB) under Titles II of the Social Security Act (the Act) in September 2022. (Tr. 163). After a hearing (Tr. 24-47), an ALJ found Plaintiff was not eligible for benefits. (Tr. 7-19). Plaintiff appealed the ALJ's decision, but the agency's Appeals Council denied his request for review. (Tr. 1). *See* 20 C.F.R. § 404.981. Plaintiff then filed a civil action for judicial review of the ALJ' s decision. *See* 42 U.S.C. § 405(g).

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. At step two, the ALJ found that Claimant had several severe impairments including chronic low back pain syndrome, spondylosis L3-4-5-S1, degenerative disc disease C 3-4-5, degenerative disc disease T 7-8-9, migraine headaches, obesity, and depression. (Tr. 12).

Next, he found that Claimant's impairments did not meet a listing. *Id.* At step four, he found that Claimant retained the residual functional capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b), limited to jobs with simple tasks with no detailed or complex instructions with only occasional interaction with the public, and occasional overhead reaching (Tr. 14). The ALJ found that this RFC prevented Claimant from returning to any of his past relevant work. (Tr. 17). Next, the ALJ proceeded to step five and determined that Claimant was not disabled because there was other work that exists in significant numbers in the national economy that he could perform. *Id.*

**Review**

Claimant asserts, *inter alia*, that the ALJ failed to provide a comprehensive analysis of his subjective complaints and failed to establish a proper RFC. The relevant medical evidence before the ALJ included the following: Claimant has had a long history of back pain. MRIs taken as early as 2016 showed degenerative changes in the mid- and lower-back. (Tr. 568-70). Yet, despite complaints of pain, along with findings of some abnormalities in his back, Claimant did not seek much treatment. (Tr. 588). Rather, he continued working full-time in various positions, including as a maintenance worker and plant supervisor. (Tr. 30-31, 171-72, 210, 240).

Approximately two years prior to the date Claimant alleged he became disabled, on July 6, 2020, he saw a pain management physician, Joseph Miller, M.D. (Tr. 588-90). Claimant noted his pain had escalated over the last six months. *Id.* Claimant had very few clinical deficits on examination. (Tr. 589). He did have tenderness over his lower back, with some limitation of motion. (Tr. 589). He retained full strength and sensation. (Tr. 589). New x-rays of the mid and lower back showed degenerative changes at multiple levels. (Tr. 589). Given his symptoms, along with the findings on imaging, Dr. Miller recommended bilateral lumbar facet nerve blocks at three separate levels in the back. (Tr. 589). Claimant proceeded with the recommended injections, with good relief of his pain. (Tr. 585). After attempting a second set of injections with less relief of his symptoms, he was treated with radiofrequency ablation, a technique used to damage nerve tissue, on both sides of his lower back in September 2020. (Tr. 578, 580). After two months, he reported 80 percent improvement in his pain (Tr. 578).

While Claimant experienced improvement of his low-back pain, he endorsed having some ongoing pain in his mid-back. (Tr. 578-79). He underwent a thoracic epidural injection, which was quite successful. (Tr. 575, 577).

Claimant started a new job at Pense Backhoe and Dozing in April 2021. (Tr. 30, 172, 210). He worked full-time operating various pieces of heavy equipment. (Tr. 30, 172, 210). While still working, Plaintiff continued to treat with Dr. Miller. However, due to complications related to his body size, additional injections were not as effective. (Tr. 572-75).

In August 2021, Claimant underwent a surgical consultation with Billie Jo Nelson, APRN. (Tr. 519). At that time, he focused on pain in his back. (Tr. 519-20). Upon examination, he had full strength and sensation, with a normal gait. (Tr. 523). APRN Nelson recommended use of a TENS unit (Tr. 519). Claimant had some relief of his back pain with use of the TENS unit. (Tr. 510). However, he began having significant pain in his neck. (Tr. 510). An October 2021 MRI showed a moderate sized disc herniation at one of the lower levels in the neck, with some contact of the spinal cord and resulting canal stenosis. (Tr. 505). After failing two injections, APRN Nelson recommended neck surgery. (Tr. 482-90).

In March 2022, Plaintiff underwent surgery on his neck, with fusion at the C6-7 level. (Tr. 475). Within two months, Plaintiff reported good improvement in the pain in his arms, as well as increased strength in his arms. (Tr. 475). Claimant reported having some ongoing back pain, though he stated, "he under[stood] that he need[ed] to lose some weight before having lumbar surgery." (Tr. 475). Plaintiff continued to work for Pense as a heavy machine operator throughout the majority of 2022. (Tr. 30, 172, 210). He eventually stopped working in September 2022. (Tr. 210, 457).

On September 6, 2022, Claimant had an appointment with APRN Nelson and continued to report improvement following his neck surgery, noting the pain in his arms was "a lot better than before surgery." (Tr. 457). However, Claimant complained of back pain despite two recent injections. (Tr. 457). He stated he had not been able to work in two weeks due to his back pain.

(Tr. 457). Upon examination, Claimant had normal range of motion, normal muscle bulk and tone, normal strength, and intact sensation. (Tr. 462). He walked with a normal gait. (Tr. 462). APRN Nelson recommended a weight loss surgery consultation, noting that if Plaintiff was able to lose weight, they "may" be able to address his lumbar stenosis at that time. (Tr. 468).

　　Claimant applied for disability benefits a week later, alleging disability as of September 8, 2022. (Tr. 163, 165). He did not return to APRN Nelson in late 2022 or 2023. He continued to see his primary care provider, Kristina Combs, NP, every three months for medication refills. (Tr. 532-40, 547-51, 553). Claimant's hypertension and diabetes were repeatedly described as "controlled" and "stable" with medications. (Tr. 532, 547, 553). It was noted that Claimant was seeing a new pain management provider for "cervicalgia" and receiving epidural injections, but those treatment notes were not submitted to the record. (*see* Tr. 548, 553).

　　A state agency medical consultant, Mohamed Kanaa, M.D., reviewed Claimant's case in December 2022. (Tr. 49-53). He found Claimant had severe musculoskeletal impairments but could still perform a range of light work with additional postural restrictions. (Tr. 51-52). A second State agency medical consultant, Carla Werner, M.D., affirmed Dr. Kanaa's assessment in April 2023. (Tr. 58-62).

　　During the November 2023 administrative hearing, Claimant testified he could not work due to pain in his neck and back. (Tr. 33). He mentioned he was currently trying to lose weight so he could pursue surgery on his lower back. (Tr. 33-34). While Plaintiff discussed problems with sitting, standing, walking, and lifting his arms over his head, he reported he was independent in his daily life, drove his wife back and forth to work, took care of his dog, and maintained the yard and the house. (Tr. 35-39). He testified he mows with a push mower, does dishes, sweeps, cleans, cooks, and cleans floors. *Id.*

Here, the ALJ found Claimant had the RFC to perform a range of light work, with additional manipulative and mental restrictions. (Tr. 14). In reaching that conclusion, the ALJ found Claimant's reported symptoms were inconsistent with other evidence of record. (Tr. 15). The ALJ also evaluated the opinions as part of the RFC assessment, and he found the State agency medical assessments limiting Claimant to light work to be "persuasive." (Tr. 17). The Court finds substantial evidence supports the ALJ's findings. The ALJ considered Claimant's subjective complaints, the objective medical evidence of record, and all medical source statements of record.

The RFC assessment must address Claimant's reported symptoms. *See* 20 C.F.R. § 404.1529; Social Security Ruling (SSR) 16-3p, 2017 WL 5180304; *Poppa v. Astrue*, 569 F.3d 1167, 1171 (10th Cir. 2009) ("Since the purpose of the credibility evaluation is to help the ALJ assess a claimant's RFC, the ALJ's credibility and RFC determinations are inherently intertwined."). In this case, Claimant claimed to experience severe, potentially disabling, symptoms. (Tr. 214-21, 248-55). Yet the ALJ explicitly stated Claimant's "statements concerning the intensity, persistence and limiting effects of [his] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." (Tr. 15). The ALJ then gave several well-supported reasons for concluding that Plaintiff's reported symptoms were not as severe as he claimed, including (1) objective medical evidence, (2) efficacy of treatment, (3) Plaintiff's work history, and (4) Plaintiff's activities of daily living.

Objective medical evidence is highly relevant to the symptom evaluation. *See* 20 C.F.R. § 404.1529(c)(4) ("[W]e will evaluate your statements in relation to the objective medical evidence."); SSR 16-3p, 2017 WL 5180304, at *5 ("[O]bjective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms[.]"). Here, the ALJ found Claimant's reports of debilitating pain were inconsistent with objective medical evidence. (Tr. 15).

The ALJ recognized Claimant had surgery on his neck in March 2022, but by May 2022, reported good improvement in his symptoms. (Tr. 15-16 (citing Tr. 457)). The ALJ further explained that imaging of the neck, taken in July 2022, showed no evidence of hardware complication. (Tr. 16 (citing Tr. 465)). And despite some findings of spondylosis and stenosis at other levels in the neck (Tr. 16 (citing Tr. 465)), he had no significant clinical deficits. (Tr. 306, 462).

The ALJ also acknowledged Claimant's complaints of ongoing mid and lower back pain, along with the findings of degenerative changes on imaging of the thoracic and lumbar spine. (Tr. 16 (citing Tr. 463-64)). However, again, despite abnormalities on imaging, Claimant had very few clinical deficits related to his back pain. (Tr. 306, 462, 538, 548). Overall, the lack of clinical deficits on examination undercut Claimant's allegations of debilitating neck and back pain resulting in extreme difficulties standing, walking, or using the arms. *See Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988) (an ALJ considers "the consistency or compatibility of nonmedical testimony with objective medical evidence"); *see also Brown v. Bowen*, 362-63 (10th Cir. 1986) ("[D]isability requires more than mere inability to work without pain. To be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment." (quotation and citation omitted)).

Claimant points out various pieces of medical evidence, which he suggests supports greater limitations. (*see* Pl. Br. 9-20). Yet, the ALJ considered that objective evidence. (Tr. 15-16). He looked at imaging of the spine. He considered the clinical abnormalities—or lack thereof. And he reasonably concluded Plaintiff was not as limited as alleged. While Claimant now attempts to raise issues by repeating the same evidence the ALJ discussed, it is of no consequence. By merely arguing the evidence considered by the ALJ should have been interpreted differently, Claimant is

asking this Court to reweigh the evidence. *See Alarid v. Colvin*, 590 F. App'x 789, 795 (10th Cir. 2014) ("In citing what he contends is contrary evidence [to the ALJ's conclusion regarding the severity of the claimant's impairments], Mr. Alarid is asking us to reweigh the evidence, which we cannot do."). Here, the ALJ considered the objective evidence in rejecting Plaintiff's allegations of disabling symptoms. Further, the ALJ limited Claimant to light work with manipulative restrictions to account for his severe musculoskeletal impairments and related limitations.

Regarding Claimant's treatment history, the ALJ detailed the timeline and cited evidence supporting his reasons for finding Claimant's subjective complaints were not believable to the extent alleged. He looked at the effectiveness of treatment, as well as the eventual conservative nature of treatment. The record reveals that, after the alleged onset date of September 8, 2022, the only evidence is from Claimant's primary care physician. (Tr. 532-33). Aside from the use of medications, and possible ongoing injections, Claimant was involved in very little treatment despite complaints of disabling pain.

A disability claimant's activities are also relevant to the symptom evaluation. 20 C.F.R. § 404.1529(c)(3)(i). Here, the ALJ noted Claimant drove his wife back and forth to work, cared for his dog, mowed the lawn with a push mower, and performed routine chores, including cooking, cleaning, sweeping, and doing the dishes. (Tr. 15 (citing Tr. 24-47)). The ALJ also referenced the fact Claimant reported he still went fishing or on hikes occasionally. (Tr. 15 (citing Tr. 214-21)). Claimant argues that, while he was able to perform certain activities, he was not doing said activities "all-day, every single day." (Pl. Br. 11). However, the ALJ acknowledged that fact. In detailing Claimant's reports and testimony, he mentioned Claimant required some breaks from chores. (Tr. 14-15). Although the "sporadic performance" of activities like performing a few household tasks

"does not establish that a person is capable of engaging in substantial gainful activity," *Frey v. Bowen*, 816 F.2d 508, 516-17 (10th Cir. 1987), an ALJ may consider such activities when, as here, they undercut a claimant's reported symptoms. *See Wilson v. Astrue*, 602 F.3d 1136, 1146 (10th Cir. 2010); *Potter v. Sec'y of Health & Human Servs.*, 905 F.2d 1346, 1349 (10th Cir. 1990).

In summary, the ALJ provided several well-supported reasons to support his conclusion that Claimant's reports of disabling symptoms were inconsistent with other evidence in compliance with 20 C.F.R. § 404.1529 and SSR 16-3p.

Finally, Claimant challenges the ALJ's hypothetical question to the vocational expert and argues it was not sufficient. (Pl. Br. 17-18). But the ALJ's hypothetical question need only include those limitations the ALJ included in the residual functional capacity finding. *See Rutledge v. Apfel*, 230 F.3d 1172, 1175 (10th Cir. 2000) (finding no error where the ALJ's hypothetical included all of the limitations he properly determined the claimant to have); *see also Qualls,* 206 F.3d at 1373 (finding no error when the ALJ relied upon a hypothetical question to the vocational expert that included all the limitations the ALJ ultimately included in his RFC assessment). The ALJ was not required to ask about the effect of limitations he did not find applied to the claimant. *See Smith v. Colvin*, 821 F.3d 1264, 1270 (10th Cir. 2016) ("The administrative law judge had to ask only about the effect of those limitations ultimately assessed; the judge did not need to ask about the effect of limitations that he didn't believe applied.").

Claimant acknowledges the ALJ relied on testimony from the vocational expert in response to a hypothetical question which matched the RFC to conclude that Claimant was not disabled (Pl. Br. 17-19). That is substantial evidence to support the ALJ's findings at step five. The fact Claimant would have included additional limitations in the residual functional capacity—particularly limitations the ALJ properly considered and rejected in view of the evidence as a whole—is irrelevant.

## Conclusion

The Court finds that correct legal standards were applied by the ALJ, and substantial evidence supports the ALJ's finding that Claimant could do other work existing in significant numbers in the national economy.

Accordingly, the decision of the Commissioner is hereby **AFFIRMED.**

**IT IS SO ORDERD this 15th day of January, 2025.**

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**